UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td></td><td></td></tr>
</table>

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   9/25/2025
```

ALICIA ANN MEHLE,

      Plaintiff,

    -against-

BODUM USA, INC.,

      Defendant.

24-cv-2740 (MKV)

OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND TO
EXCLUDE EXPERT TESTIMONY

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Alicia Ann Mehle filed this products liability action against Defendant Bodum USA, Inc. ("Bodum"), alleging that she sustained burns when the carafe of her Bodum Java French Press cracked [ECF No. 1 ("Cmpl.")]. Bodum filed a consolidation motion for summary judgment and to exclude the testimony of Mehle's proffered expert witness [ECF Nos. 22, 23, 24]. For the reasons set forth below, the motion is DENIED in its entirety.

## I.   BACKGROUND

### A. Mehle Suffered Burns Using her Bodum French Press.[1]

The following facts are undisputed. Plaintiff Alicia Ann Mehle purchased a new Bodum Java French Press with a glass carafe in 2018 or 2019 in Hawaii, where she lives. Def. 56.1 ¶¶ 2, 6; Pl. Counter ¶¶ 2, 6. She used the French Press hundreds of times over the next few years. Def. 56.1 ¶ 4; Pl. Counter ¶ 4. On April 21, 2022, Mehle was injured at home while making coffee in the French Press. *See* Def. 56.1 ¶¶ 1, 11, 14, 20; Pl. Counter ¶¶ 1, 11, 14, 20.

Specifically, Mehle boiled water, put hot water in the carafe of the French Press, put coffee

---

[1] The facts in this Section are taken from the evidence cited in the parties' Local Civil Rule 56.1 Statements, including the declarations submitted in connection with the pending motions and the exhibits attached thereto [ECF Nos. 23, 23-1 ("Def. 56.1"), ECF No. 23-2 ("Mehle Depo."), 23-8 ("Zheng Depo."), 26, 26-1 ("Pl. Counter"), 28 ("Def. Response to Pl. Counter")].

grounds in the carafe, let the coffee grounds saturate, and then pushed down the plunger after the coffee grounds had saturated for about five minutes. Def. 56.1 ¶ 8; Pl. Counter ¶ 8. While Mehle was pushing the plunger down with her right hand, the glass carafe cracked. Def. 56.1 ¶ 11; Pl. Counter ¶ 11. Hot coffee escaped through the crack and spilled on Mehle's right-side torso, right hip, upper right thigh, and right hand. Def. 56.1 ¶ 14; Pl. Counter ¶ 14.

Mehle went to the hospital, where she was diagnosed with first and second degree burns. Def. 56.1 ¶ 20; Pl. Counter ¶ 20. She received treatment of her injuries on eight separate occasions between April 2022 and May 2022. Def. 56.1 ¶ 19; Pl. Counter ¶ 19.

## B. Mehle Commenced this Action.

Mehle initiated this action by filing a complaint [ECF No. 1 ("Cmpl.")]. The Complaint asserts claims of: (1) strict liability, Cmpl. ¶¶ 20–27 ("Count I"); (2) negligence, Cmpl. ¶¶ 28–31 ("Count II"); (3) negligent design defect, Cmpl. ¶¶ 32–38 ("Count III"); and (4) negligent failure to warn, Cmpl. ¶¶ 39–42 ("Count IV"). Bodum filed an answer to the Complaint, and the parties conducted discovery [ECF Nos. 7, 12, 17].

## C. Mehle and Bodum Retained Competing Experts.

During expert discovery, Mehle disclosed one expert witness, Mingxi Zheng, M.S., P.E. [ECF Nos. 23-4 ("Pl. Expert Disclosure"), 26-6 ("Zheng CV"), 23-7 ("Zheng Report"), 26-3 (same)]. Zheng is a "Materials/Mechanical Engineer" at Berkeley Engineering and Research, Inc. ("BEAR"). Zheng CV at 1. She holds degrees from the University of California, Berkeley and a "Professional Engineer License." *Id.* Her Curriculum Vitae lists specialties in "metallurgy, fracture mechanics and failure analysis" and experience in "materials testing and process development in the aerospace and manufacturing industries." *Id.* Prior to joining BEAR, she held engineering roles at SpaceX and a number of other organizations. *See id.* at 1–2.

Bodum also disclosed one expert witness, Gabriel Ganot, Ph.D., P.E., CWI [ECF Nos. 23-5 ("Def. Expert Disclosure"), 23-6 ("Ganot Report"), 26-5 (same)]. Ganot is a "Principal Engineer" in the "Materials and Corrosion Engineering Practice" at Exponent, Inc., which is an "Engineering & Scientific Consulting" firm. Ganot Report at 1, 3; *id.*, Appendix A ("Ganot CV") at 1. He holds a Ph.D. and master's degree in Materials Science and Engineering from Columbia University and a "Professional Engineering (P.E.) license in Metallurgy and Materials," among other credentials. Ganot Report at 3; Ganot CV at 1. Ganot represents that he has "performed failure analyses of many fractured glass components and devices" during his employment at Exponent. Ganot Report at 3.

Zheng and Ganot conducted a joint inspection of the French Press at Exponent in 2024. Ganot Report at 1; Zheng Report at 4. The joint inspection involved observing and photographing pieces of glass using a Keyence microscope. Ganot Report at 5; Zheng Report at 5. Zheng and Ganot also used a scanning electron microscope (SEM) and energy dispersive X-ray spectroscopy (EDS). Ganot Report at 1, 5, 8; Zheng Report at 5, 7. Ganot, but not Zheng, also performed experiments using "an exemplar French Press." Ganot Report at 16–20.

In her expert report, Zheng opines that the French Press "is defective" and failed because its stainless-steel plunger scratched the inner surface of the glass carafe, which created "crack initiation sites," which, after "cyclical thermal stresses," allowed thermal stress to crack the glass carafe on April 21, 2022. Zheng Report at 3. Zheng opined that the "angles" and "crack patterns" she observed were consistent with a glass failure from thermal stress. Zheng Report at 5. She also found "**stainless steel residue**" when she analyzed a "representative . . . crack initiation site." Zheng Report at 7 (emphasis in original). She noted a piece of "protruding wire" on the steel coil

around the plunger.[2]  Zheng Report at 11; *see id.* at 10.

In his expert report, by contrast, Ganot opines that an "external mechanical force" cracked the glass carafe.  Ganot Report at 4, 9–12.  Ganot opines that "the crack pattern and the features on the fracture surfaces" demonstrate that a "single fracture origin" was responsible for the crack. Ganot Report at 5.  He opines that, when he examined the fracture origin, "a *cantilever curl*," which is a "very telltale feature of bend fractures," was "evident."  Ganot Report at 9 (emphasis in original) (internal quotation marks and citation omitted).  According to Ganot, thermal stress could not have caused the crack, "even considering the presence of surface imperfections induced through use," and there is "no evidence" that the plunger of the French Press caused those surface imperfections.  Ganot Report at 21, 24.  Ganot further opines that "the end of the coil wire is not protruding," Zheng "has not shown that the wire end could make contact with the inner diameter of the carafe," and "other commonly used stainless steel objects, such as utensils," could have caused the scratches.  Ganot Report at 24.

**D.  Bodum Filed the Pending Motion for Summary Judgment and To Exclude Zheng.**

After the parties had completed discovery, Bodum filed a consolidated motion for summary

---

[2]



*Figure 10: Additional views of the plunger assembly showing the protruding wire, highlighted by the arrow.*

judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and to exclude expert testimony, pursuant to Rule 702 of the Federal Rules of Evidence [ECF Nos. 22, 23, 24 ("Def. Mem.")].  Bodum argues that Mehle cannot prevail on any of her claims without expert testimony to establish that a defect in the French Press proximately caused Mehle's injuries and that the testimony of Mehle's sole expert witness, Zheng, should be excluded.  *See* Def. Mem. at 1, 3–4, 14, 25.  Bodum contends that "Zheng's opinions are unreliable given the lack of work she did to reach them."  *Id*. at 14.  Specifically, Bodum asserts that Zheng should have done more "testing or analysis" to prove the "protruding metal coil" on the plunger "in fact" caused the "microscratching observed on the subject French Press."  *Id*.

Mehle filed an opposition [ECF Nos. 25 ("Pl. Opp."), 26].  It cites authority that Bodum's complaints about Zheng "**go to the weight, not the admissibility**, of [her] testimony."  Pl. Opp. at 6 (emphasis in original) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).  Mehle argues that there are disputes of material fact as to whether the French Press was defective, and, as such, this case should go to a jury.  *Id*. at 23.

Bodum filed a reply brief in further support of its motion [ECF No. 27, 28 ("Def. Response to Pl. Counter")].  Thereafter, Mehle filed a notice of supplemental authority, alerting the Court that another judge in this District had largely denied a similar motion by Bodum, in another case about its French press, to exclude testimony by Zheng and to grant Bodum summary judgment [ECF No. 29].  *See Mullen v. Bodum USA, Inc*., No. 23-cv-1166 (AT), 2025 WL 1735423, at *1 (S.D.N.Y. June 23, 2025).

## II.    LEGAL STANDARDS

### A.  Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be

granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 88 (2d Cir. 2025) (alteration, internal quotation marks, and citation omitted). If a rational trier of fact could find for the non-moving party, summary judgment is inappropriate. *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 61 (2d Cir. 2021).

## B. Admissibility of Expert Evidence

Rule 702 of the Federal Rules of Evidence provides that a witness "who is qualified as an expert" may offer testimony if it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). District courts have a "gatekeeping" responsibility to ensure that proffered expert opinions meet that standard. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In exercising its gatekeeping role under Rule 702 and *Daubert*, a district court's inquiry focuses on "three factors": (1) whether the expert is qualified, (2) whether the expert's opinion is based on reliable data and methodology, and (3) whether the testimony is relevant. *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp.

3d 328, 352 (S.D.N.Y. 2023); *see A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 364 F. Supp. 3d 291, 324 (S.D.N.Y. 2019).

A district court has broad discretion to determine the admissibility of expert testimony, including "*to determine reliability.*" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (emphasis in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The Second Circuit has held that a "trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence 'an apples and oranges comparison.'" *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). "[O]ther contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Id.* (brackets in original) (quoting *Boucher*, 73 F.3d at 21).

In exercising its broad discretion, a district court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered" where the only connection between the data and the opinion is "the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). However, there is no requirement that an expert perform any particular tests. *See Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 95 (2d Cir. 2000); *Figueroa v. Bos. Sci. Corp.*, 254 F. Supp. 2d 361, 368 (S.D.N.Y. 2003) (Chin, J.). Indeed, "[t]he expert need not have conducted her own tests." *Gussack Realty Co.*, 224 F.3d at 95. Even a "minor flaw in an expert's reasoning . . . will not render an expert's opinion *per se* inadmissible." *Amorgianos*, 303 F.3d at 267. Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence." *Daubert*, 509 U.S. at 596.

### III.    DISCUSSION

Bodum fails to offer any basis to exclude Mehle's proffered expert testimony.  Bodum does not argue that Zheng is not qualified to give expert testimony or that her testimony would not be relevant.  Although it purports to argue that Zheng's opinions are unreliable, Bodum merely contends, in effect, that its own expert is superior and should be credited over Zheng.  Where, as here, "two contradictory expert opinions meet the requisite threshold of reliability, it is the function of the factfinder . . . to determine which is the more trustworthy and credible." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 326 (S.D.N.Y. 2015) (quoting *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007)).  Far from offering any basis to grant Bodum summary judgment, "the clash of experts creates a genuine issue" for a trial. *United States v. Teva Pharms. USA, Inc.*, No. 13-cv-3702 (CM), 2019 WL 1245656, at *12 (S.D.N.Y. Feb. 27, 2019).  Moreover, since Bodum expressly argues that it "is entitled to summary judgment *because* Ms. Zheng's opinions are unreliable," its failure to show that Zheng's opinions are unreliable is fatal to its motion for summary judgment.  Def. Mem. at 14 (emphasis added).

### A.  Zheng's Testimony Is Admissible.

Bodum argues that "Ms. Zheng's opinions are unreliable given the lack of work she did to reach them."  Def. Mem. at 14.  Specifically, Bodum contends that Zheng "was required to show testable support for her hypotheses" that the "protruding metal coil" Zheng observed "actually touched" the inside of the glass carafe, that protruding metal "would result in the type of scratches [Zheng] observed on [Mehle's] French Press," those "scratches were of sufficient depth to result in a thermal stress fracture" from hot water being poured into the carafe, and that such "a thermal fracture can actually originate on the inside of the glass." *Id.* at 15.  Bodum further contends that

the report of its own expert, Ganot, who did perform testing, demonstrates that each of Zheng's hypotheses are false. *See id.* at 23–24.

Bodum is free to make these arguments before a jury. *See Daubert*, 509 U.S. at 596. Its attacks on Zheng's report all "go to the weight, not the admissibility, of [her] testimony." *Zerega Ave. Realty Corp.*, 571 F.3d at 214 (quoting *Boucher*, 73 F.3d at 21); *accord McCulloch*, 61 F.3d at 1044. Zheng's opinions obviously are not "so unrealistic and contradictory as to suggest bad faith" or otherwise untethered from reliable data and methods. *Zerega Ave. Realty Corp.*, 571 F.3d at 214 (quoting *Boucher*, 73 F.3d at 21). As such, the Court is well within its very broad discretion to determine that Zheng's opinions are sufficiently reliable that her testimony is admissible. *See Kumho Tire*, 526 U.S. at 152; *Amorgianos*, 303 F.3d at 265.

### 1. The Parties Jointly Inspected the French Press, and Zheng Was Not Required To Perform Further Testing.

As an initial matter, the Court notes, Bodum cannot and does not argue that Zheng failed to inspect the French Press or used any unreliable methods during her inspection. The parties' experts performed "a joint inspection" of the French Press. Ganot Report at 1; Zheng Report at 4. During that joint inspection, Bodum's own expert used precisely the same methods as Zheng. *See* Ganot Report at 1, 5; Zheng Report at 5. Specifically, both experts observe and analyze the cracked glass carafe of the French Press using a Keyence microscope, a scanning electron microscope (SEM), and energy dispersive X-ray spectroscopy (EDS). Ganot Report at 1, 5, 8; Zheng Report at 5, 7. Bodum argues only that Zheng was required to do more.

In particular, using the same methods of observation that Ganot used, Zheng observed "an anomaly in the coil" of the stainless steel plunger component of the French Press. Zheng Report at 10. Zheng observed that "a sharp corner of steel wire [was] sticking out . . . . beyond the implied design circumference." *Id.* Zheng reasoned that, "[s]ince the plunger is already a snug fit within

9

the diameter of the carafe, this expanded circumference means that this sharp wire corner is pushing . . . with extra force against the internal surface of the carafe." *Id.* Zheng further reasoned that her observation of a "sharp corner of steel" protruding from the plunger coil "correlates with the scratches and stainless-steel residue [she] observed [inside the glass carafe] during SEM/EDS analysis." *Id.* Zheng concluded that, "**more likely than not**," the protruding wire of the stainless steel plunger "**scratched the glass carafe and created the[] crack initiation sites**" she observed in the cracked glass. *Id*. at 7.

Zheng used uncontested scientific methods of observation (namely, the same Keyence microscope, scanning electron microscope, and energy dispersive X-ray spectroscopy that Ganot used) and offered a reasoned analysis of her observations. Contrary to Bodum's assertions, Zhang's opinion is neither mere *ipse dixit*, nor pure speculation. *See* Def. Mem. at 1, 17. Rather, under Rule 702, Zheng is permitted to offer her opinions about her observations based on her uncontested qualifications as a trained and experienced "Materials/Mechanical Engineer." Zheng CV at 1; *see Daubert*, 509 U.S. at 592 (the "relaxation" of the standard for expert testimony "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline"); *see Joiner*, 522 U.S. at 146 ("Trained experts commonly extrapolate from existing data."); *Figueroa*, 254 F. Supp. 2d at 366–369.

Bodum argues that Zheng "was required" to do more "testing or analysis confirming" that the protruding steel wire she observed "actually touched" the inside of the glass carafe and caused the scratches she observed. Def. Mem. at 14, 15. Bodum argues that Zheng "could have, but did not, perform an experiment on an exemplar Bodum French press" to determine if "moving [the plunger] up and down" would result in the kind of scratching Zheng observed in Mehle's French Press. Def. Mem. at 16. Bodum stresses that its own expert concluded that the sharp corner of

steel Zheng observed was not protruding but rather was "shielded" from contact with the glass carafe. *Id.* at 17; *accord* Ganot Report at 24.

It is well established that Zheng was not required to perform the test that Bodum suggests. *See Gussack Realty Co.*, 224 F.3d at 95; *Figueroa*, 254 F. Supp. 2d at 368; *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 76 (S.D.N.Y. 2001) ("testing is not an 'absolute prerequisite' for an expert's theory of causation . . . in a design defect case"); *Argonaut Ins. Co. v. Samsung Heavy Indus. Co.*, 929 F. Supp. 2d 159, 170 (N.D.N.Y. 2013) (that an expert "may have neglected to perform some 'essential' tests or measurements will go to the weight of his testimony, not its admissibility"). Rather, asking an expert witness why she declined to perform a particular test is a classic question for cross-examination. *See Daubert*, 509 U.S. at 596; *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2021 WL 4810266, at *25 (S.D.N.Y. Sept. 30, 2021); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 2019 WL 1515231, at *3 (E.D.N.Y. Feb. 21, 2019) ("any failure of [the expert] to conduct additional testing or controls on his assumptions do not make them suspect under *Daubert*; they simply expose him to impeachment on cross-examination"). Likewise, Ganot's opinion that the sharp corner of steel on the plunger was shielded, rather than protruding, is "contrary evidence" for Bodum to present to a jury, rather than a reason to exclude Zheng's testimony. *Daubert*, 509 U.S. at 596.

In a similar vein, Bodum argues that Zheng's testimony should be excluded as unreliable because Zheng failed to "rule out the possibility" that other stainless steel objects, such as utensils, could have cause the scratching she observed. *Id.* Courts in this Circuit have ruled that an expert must account for "obvious alternative explanations in order for [her] testimony to be reliable," although she is not required to rule out "every possible alternative." *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 238 (S.D.N.Y. 2004); *see*

*In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005); *but see Figueroa*, 254 F. Supp. 2d at 367 (failure to "rule out alternative causes . . . goes to the weight of the evidence rather than its admissibility"). These courts have reasoned that "any theory that fails to explain information that otherwise would tend to cast doubt on that theory is inherently suspect." *In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d at 425.

Zheng did not suspiciously obfuscate the possibility that something other than the plunger scratched the inside of the glass carafe. Rather, based on her observations, Zheng concluded that it was "more likely than not" that the steel plunger caused the scratches and left the steel residue inside glass carafe. Zheng Report at 7. Zheng made note of "Bodum's own recommendations to use only 'plastic and wooden tools to reduce scratching and weakening of the beakers.'" *Id.* at 11. Moreover, there is no dispute that, at her deposition, Mehle testified that she did not stir the coffee inside the French Press with any utensils and she used only "a little rubber spatula" to clean the French Press [ECF No. 23-2 ("Mehle Depo.") at 26:16–28:12]. Def. 56.1 ¶ 9; Pl. Counter ¶¶ 9, 99, 100; Def. Response to Pl. Counter ¶¶ 99, 100.

Bodum is free to argue to the jury that metal utensils, or something else besides the plunger, caused the scratches and left the steel residue that were observed in Mehle's French Press. Bodum is also free to argue that Zheng should have performed testing to determine the most likely cause. It is up to the jury how much weigh, if any, to give Zheng's opinion that a sharp corner of steel protruding from the plunger likely caused the scratches and left the steel residue. *See, e.g., Zerega Ave. Realty Corp.*, 571 F.3d at 214; *Figueroa*, 254 F. Supp. 2d at 367; *DPWN Holdings (USA), Inc.*, 2019 WL 1515231, at *3.

This is not a case in which the Court must protect the jury from being confused by Zheng's "absurd and irrational pseudoscientific assertions." *Daubert*, 509 U.S. at 595. There is nothing

"unrealistic and contradictory" about her hypothesis. *Zerega Ave. Realty Corp.*, 571 F.3d at 214 (quoting *Boucher*, 73 F.3d at 21). There is simply no reason to exclude Zheng's testimony.

### 2. Bodum Argues Zheng Is Wrong About Thermal Stress But Fails To Show that Zheng's Opinion Is Unreliable.

Bodum argues that Zheng improperly assumes that the scratches observed in Mehle's French Press were "sufficient" to "result in a thermal stress fracture." Def. Mem. at 15, 17–20. Bodum contends that Zheng should have performed more testing or "calculations." *Id.* at 18. It contends that its own expert performed an experiment, on an exemplar Bodum French press, that, Bodum contends, proves that thermal stress could not have caused the fracture. *See id.* at 19–20. These arguments fail for largely the same reasons discussed above.

As an initial matter, Zheng opines in her report that the French Press failed from thermal stress based on her observation of the "characteristics" of the fracture itself. Zheng Report at 5. Specifically, Zheng opines, based on her specialized knowledge, training, and experience, that "[g]lass failures from thermal stresses result in little to no branching in crack patterns" and "result in cracks that form (near) 90° angles with both the edge and the surface of the glass." *Id.* According to Zheng, "[b]oth of these characteristics are evident" in Mehle's French Press. *Id.* Zheng also observed so-called "Wallner lines perpendicular to the side walls" that she represents are "generally indications of thermal related failures." *Id.*; *see id.* at 5, 7.

Bodum dismisses Zheng's evidence of thermal stress, arguing that she provides "measly" analysis. Def. Mem. at 21–22. It argues that without "calculations, formulas, experiments, or reliable studies," Zheng's opinion is speculative. *Id.* However, as discussed above, an expert is permitted to offer an opinion based on her knowledge and observations. *See Daubert*, 509 U.S. at 592. Indeed, Bodum relies on its own expert's competing analysis of "the crack pattern and the features on the fracture surfaces," based on his specialized knowledge, training, and experience,

in support of his opinion that an "external mechanical force" cracked the glass carafe. Ganot Report at 4, 5. While Ganot does provide a lengthier discussion of Wallner lines (and "Hackle" marks), he does not use "calculations, formulas, [or] experiments" when he gives his opinion of "[t]he correct interpretation of such markings." *Id.* at 6. Rather, both experts offer interpretations of the markings they observed and cite purported authorities. *See, e.g.*, Zheng Report at 5 nn. 2, 3; Ganot Report at 6 n.4. In this circumstance, it is the role of the jury "to determine which is the more trustworthy and credible expert. *Washington*, 105 F. Supp. 3d at 326.

Moreover, as discussed above, Zheng was not required to perform an experiment to support her opinion that thermal stress ultimately caused the French Press to fracture. *See supra* III.A.1; *Gussack Realty Co.*, 224 F.3d at 95; *Figueroa*, 254 F. Supp. 2d at 368; *Colon ex rel. Molina*, 199 F. Supp. 2d at 76. In her report, Zheng offers a reasoned analysis that, as a result of the plunger scratching the glass carafe, crack initiation sites formed, the cracks grew with the continued use of the French Press, and "[t]his allowed the product to fail from cyclical thermal stresses," *i.e.*, repeated heating and cooling. Zheng Report at 3; *see id.* at 5, 7, 23. According to Zheng, "a critical point was reached," and hot water caused the glass to fracture, "as indicated by the 90-degree angles of the fracture pattern and minimal branching of cracks." *Id.* at 23.

Bodum contends that if Zheng had performed an experiment to test these hypotheses, she would have found, as Bodum contends Ganot found, that "thermal stress *could not* have caused the fracture." Def. Mem. at 20 (emphasis in original). However, Ganot did not test whether a Bodum French press with pre-existing scratches would, over time, after repeated cycles of heating and cooling, fracture from thermal stress. Rather, as the Court reads his report, Ganot conducted a "Thermal Shock Experiment" using an exemplar Bodum French press that did not have any pre-existing scratches or cracks and, separately, performed a calculation that, according to Ganot,

demonstrates that "thermal stresses alone would not be sufficient to cause fracture, even in the presence of the observed imperfection/surface flaw." Ganot Report at 19–22. Ganot may or may not be correct. In all events, however, Zheng's failure to perform a particular experiment that Bodum's own expert also did not perform is not a basis to exclude her testimony.

Bodum cites a Second Circuit decision explaining that "failure to test a theory of causation *can* justify a trial court's exclusion of the expert's testimony." Def. Mem. at 14 (emphasis added) (quoting *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir. 2000)). In that case, the Second Circuit concluded that a district court had "acted well within its discretion" to exclude purported expert testimony about a boating accident where the proffered expert "had never seen the actual boat or motor either in person or in photographs, had never spoken to either of the boys involved in the accident, was unaware of the dimensions of the boat and the placement of the seats in relation to the motor, did not know precisely what happened and where the boys were positioned in the time immediately preceding the accident, and had never attempted to reconstruct the accident and test his theory." *Brooks*, 234 F.3d at 92. In this context, where the supposed expert had failed to square his theory with basic facts about the accident, the Second Circuit upheld the district court's determination that his "testimony was speculative and unreliable." *Id.* at 91. Here, unlike the expert in *Brooks*, Zheng examined the French Press, in person, using multiple, reliable methods of observation and analysis (*i.e.*, the same Keyence microscope, scanning electron microscope, and energy dispersive X-ray spectroscopy Bodum's own expert used). *See* Zheng Report at 4–5; Ganot Report at 1, 5. The Second Circuit has not held, in *Brooks* or elsewhere, that a district court must exclude expert testimony solely because the expert did not perform an experiment to support her theory of causation.

Bodum also contends that, at her deposition, Zheng admitted to improperly assuming that

the scratching in the French Press was significant enough to result in a thermal stress fracture. Def. Mem. at 18–19. Specifically, Zheng was asked "how do you know if [the scratching] was big enough to cause a failure?" [ECF No. 23-8 ("Zheng Depo.") at 295:8–9]. She replied, "Because it failed." Zheng Depo. at 295:10. Bodum contends that this snippet of testimony shows that Zheng was biased and failed to consider alternative explanations.

This contention, however, ignores the broader context of Zheng's deposition testimony and the bases for her opinions. Specifically, Zheng testified that she did not believe she needed to test the strength of scratched carafe glass to determine if thermal stress *could* fracture it because she believed that thermal stress *did* fracture the glass of the French Press based on her observations and analysis of the fracture itself. *See* Zheng Depo. at 297:9–24. She testified that a "big part" of her "analysis is based in the fractography," which is "visual." *Id.* at 298:9–10, 297:18–19; *see id.* at 297:21–22 ("There is no mathematical quantification for a Wallner line."). Zheng testified that to reject such visual analysis, and insist that she needed to test the strength of the scratched glass, is to "criticize the whole field of fractography." *Id.* at 297:17–18.

Bodum does not argue that fractography is an unreliable methodology. *See* Def. Mem. at 5, 6, 8, 23. Indeed, its own expert relies on fractography. *See id.*; Ganot Report at 5. Bodum is free to criticize Zheng's use of fractography to the jury. Bodum may persuade the jury that Ganot's contrary fractographic analysis is supported by other elements of his report, including experiments and mathematical calculations. However, the snippet of Zheng's deposition testimony that Bodum cites, shorn of all context, is not a basis to keep her testimony from the jury.

Finally, Bodum argues that, in light of "basic glass fractography," thermal stress could not have caused the fracture because, both experts agree, the origin of the fracture was on the interior of the glass. Def. Mem. at 23–24. According to Bodum, Zheng admits that pouring hot water into

glass causes "compression," rather than "tension," and that "[g]lass fractures cannot naturally occur on the side under compressive stress; they can only initiate on the side that is in tension." *Id.* According to Bodum, these admissions prove that Zheng's thermal stress theory is unreliable. *Id.* at 24 ("Therefore, the cause of the fracture was due to mechanical force because the origin of fracture was on the interior side of the glass (the side in tension).").  However, Zheng responded to this line of argument at her deposition, testifying that glass does not "naturally" crack under compressive stress "[i]n an ideal environment," but she was "not saying that only thermal stress led to the failure."  Zheng Depo. at 183:25, 185:17–22.  To the extent that there is any "flaw" in Zheng's reasoning, it does not render her testimony inadmissible.  *Amorgianos*, 303 F.3d at 267. Rather, the remedy is "[v]igorous cross-examination."  *Daubert*, 509 U.S. at 596.

### 3. Bodum Fails To Provide a Reason To Exclude Zheng's Testimony about Alternative Designs.

Bodum complains that "[i]n just one page of her report," Zheng "suggests alternative designs of (a) non-glass use in the carafe, (b) silicone on the edge of the plunger, or (c) welding or tacking down the plunger's wire coil."  Def. Mem. at 24; *see* Zheng Report at 12.  In just two paragraphs, Bodum contends that Zheng's testimony about alternative designs should be excluded because she did "no testing or comparison of these alternative designs herself."  *Id.*  However, "such testing is not required to establish feasibility if the expert can point to an existing design in the marketplace."  *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 178 (E.D.N.Y. 2008) (Bianco, J.); *see Bah v. Nordson Corp.*, 2005 WL 1813023, at *8 (S.D.N.Y. Aug. 1, 2005); *see also Colon ex rel. Molina*, 199 F. Supp. 2d at 76 (testing is "almost always" required "if the expert cannot point to an existing design in the marketplace"); *Solorio v. Asplundh Tree Expert Co.*, 2009 WL 755362, at *3 (S.D.N.Y. Mar. 23, 2009) (Sullivan, J.).  Here, Zheng cited Bodum's own existing non-glass carafe and another existing French press that uses silicone.  *See* Zheng Report

at 12.  In her report, Zheng did not point to an existing design in the marketplace to support her suggestion for removing the "protruding sharp end of the coil."  Zheng Report at 12.  However, "testing is not an 'absolute prerequisite' for an expert's . . . alternative design to be admissible." *Colon ex rel. Molina*, 199 F. Supp. 2d at 76.[3]

Accordingly, for all the reasons set forth above, Bodum's motion to exclude Zheng's testimony is DENIED.

### B.  Bodum Is Not Entitled to Summary Judgment.

Bodum expressly hinges its request for summary judgment on the exclusion of Zheng's testimony.  *See* Def. Mem. at 1, 3–4, 25–26.  However, as explained above, Zheng's testimony is admissible.  Obviously, given the "clash of experts" in this case with respect to what caused Mehle's French Press to fracture and whether the Bodum French Press is defective, there are genuine issues for a jury to resolve at trial.  *Teva Pharms. USA, Inc.*, 2019 WL 1245656, at *12; *see Brooklyn Ctr. for Indep. of the Disabled*, 11 F.4th at 61.

Accordingly, Bodum's motion for summary judgment is DENIED.

### IV.    CONCLUSION

For the reasons stated above, Defendant's consolidated motion for summary judgment and to exclude expert testimony is DENIED in its entirety.  The Clerk of Court respectfully is requested to terminate docket entry 22.  The Court will enter a separate order scheduling a jury trial in this matter.

**SO ORDERED.**

**Date: September 25, 2025**
        **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

---

[3]  If Bodum maintains that testing is necessary "to establish the[] feasibility" of welding or tacking down the plunger's wire coil, *Bah*, 2005 WL 1813023, at *8, it may renew its request to exclude that portion of Zheng's testimony in a motion *in limine*.